No. 2405.

ARTHUR CARR *v.* THE STATE.

1. PRACTICE—NON-AGE—BURDEN OF PROOF.—Proof of the non-age of the accused at the time of the commission of the offense, imposes upon the State the burden of proving that when he committed the offense, if he did commit it, he understood the nature and illegality of the act. This

proof is not sufficiently made if the State merely shows that he knew the difference between good and evil, or that he was possessed of the intelligence of ordinary boys of his age. On the contrary, it must be affirmatively shown that he had sufficient discretion to understand the nature and illegality of the particular act constituting the crime.

2. SAME—CIRCUMSTANTIAL EVIDENCE.—It is not necessary that the proof of discretion should be made by positive evidence. In many cases, circumstances of education, habits of life, general character, moral and religious training, and, oftentimes, the circumstances connected with the offense will be sufficient to satisfy the jury that the accused had the discretion required to render him responsible for the crime.

3. SAME—EVIDENCE—EXPERT TESTIMONY.—One of the exceptions to the general rule that a witness can speak only as to facts, and will not be permitted to express his belief or opinion, is that, when the issue is as to the sanity of a person, even the non-expert witness may state his opinion and conclusion upon the facts to which he has testified. This rule will comprehend the inquiry as to whether or not, on account of non-age, the accused had sufficient discretion to understand the nature and illegality of the acts constituting the crime charged against him; and the witness, having stated the facts upon which he based his opinion, may state his opinion as to the discretion of the accused. See the opinion on the question.

4. SAME—CHARGE OF THE COURT.—The refusal by the trial court to give a requested instruction in charge to the jury is not error if the general charge comprehended clearly the law applicable to the case.

5. SAME—CONFESSIONS.—See the statement of the case for circumstances under which it is *held* that the confession of the accused was properly admitted in evidence against him.

6. SAME—CIRCUMSTANTIAL EVIDENCE—CHARGE OF THE COURT.—It is not incumbent upon the trial court to give in charge to the jury the law applicable to circumstantial evidence, unless the State, in seeking a conviction, relies wholly upon that character of evidence. Note that this rule, in view of the confession of the accused, applies to this case.

7. SAME.—The credibility of the witnesses and the weight of the evidence are questions addressed to the trial jury alone. In passing upon the truth of a confession, a part of which has been contradicted by other evidence, it is within the power of the jury to accept one portion of the confession as true, and to reject as untrue that which has been contradicted by other testimony. See this case in illustration.

8. BURGLARY—FACT CASE.—See the statement of the case for evidence *held* sufficient to support a conviction for burglary.

APPEAL from the District Court of Red River. Tried below before the Hon. D. H. Scott.

The conviction in this case was for the nocturnal burglary of the house of Gough & Smith, in Red River county, Texas, on September 10, 1887. The penalty assessed against the appellant was a term of two years in the penitentiary.

Joe F. Smith was the first witness for the State. He testified that he was the junior member of the firm of Gough & Smith, who were retail grocers, doing business in the town of Clarksville, Red River county, Texas. Witness's partner's name was William C. Gough. The witness had known the defendant about one year. The store house of Gough & Smith, to the knowledge of the witness, was burglariously entered at night as often as three times during the month of September, 1887. Entrance was effected on each of those occasions through the up stairs window, just above the awning which faced the public square of the said town of Clarksville. One of the glass panes of that window was so broken that a person could insert an arm and remove the fastening apparatus of the window frame. To get to the window described, a person would have to mount the stairs leading from a public street to an adjoining building, and thence pass through a window or door in that building to the awning. There were no outside stairway or steps attached to the Gough & Smith store building. After the first burglary in September, the witness missed between fifty and seventy-five cigars and some snuff, from their stock; after the second he missed some flour, and after the third he missed some money from the cash drawer. Witness had often seen the defendant and one John Reddick, another colored boy, together about town. Reddick worked about and in the store which adjoined Gough & Smith's store. Defendant was an exceedingly bright boy of his age and race. He could write a good hand, and witness was satisfied that he knew right from wrong. Witness was confident that defendant was possessed of sufficient discretion to know that it was wrong and illegal to break into and steal from a house. Witness had never seen the defendant in Gough & Smith's store house at night, and had no other than a casual acquaintance with him. He had never had any business transactions with defendant, and knew him only well enough to observe that he was a very bright minded negro boy. Witness would suppose that defendant was between thirteen and fourteen years of age. On the morning of September 24, 1887, S. B. Donoho told witness that he saw some person in the witness's store on the night before. Witness had no one clerking in his store during the month of September, 1887. The witness carefully locked the openings to his store on the night that Donoho claimed to have seen some one in that building. Gough & Smith's losses in money, during the month of September, 1887, amounted to twenty

dollars. The goods and money taken from that store on the occasions mentioned belonged to witness and Gough, and were taken without the consent of the witness. The witness did not consent for defendant or any one else to enter the store house on either of the occasions referred to by him. Having once passed through the window over the awning, a person would have access to every part of Gough & Smith's store.

W. C. Gough, the senior member of the firm of Gough & Smith, testified, for the State, substantially as did the witness Smith. He declared that the store house, on each of these occasions referred to, was entered by some one without his knowledge or consent, and that the house was always carefully closed and locked at the close of business on each day. He had known the defendant well for several years, and would estimate his age as between thirteen and fourteen years. He regarded him as a remarkably bright colored boy, and was satisfied that he knew right from wrong, and knew that it was a wrong and illegal act, and a punishable crime to break and enter into, and steal from a house. On the morning of September 25, 1887, S. B. Donoho told witness that he saw a little negro boy in witness's house on the night before. Upon examining the store witness found several match stumps scattered over the floor.

S. B. Donoho testified, for the State, that he had known the defendant and another negro boy named John Reddick about a year and a half. When the witness was passing Gough & Smith's store, in Clarksville, on the night of September 23, 1887, his attention was attracted by a light in that store, the door of which was closed. He stopped between two and three feet from the door, to watch. Within a few minutes he saw John Reddick pass from behind a lot of boxes, some twenty feet from the door. He held a lighted match in his hand, which he blew out on getting clear of the boxes. He was followed by another boy of about the defendant's size and color, whom the witness failed to recognize. It was then not later than eight o'clock, and several stores on the square were still open. On the next morning the witness notified both Gough and Smith of what he saw on the said night. In passing from the door or window of the building adjoining Gough & Smith's store, and across the awning to the window in Gough & Smith's store, a person would be in very plain view, and would be readily seen by passers by.

J. D. Barry testified, for the State, that he was the senior member of the firm of Barry, Love & Co., whose store adjoined that

of Gough & Smith on the east. A stairway led from the street to the second story of witness's building. By mounting those steps and going into and through Doctor Dinwiddie's office, a person could gain access to the awning over Gough & Smith's store. That awning was immediately underneath the window with a broken pane described by the witnesses Gough and Smith. Witness knew the defendant, and considered him a very bright, intelligent negro boy, of between thirteen and fourteen years of age. He associated with a negro boy named John Reddick, whom, during the month of September, 1887, the witness had working about his store. All that time the witness had in his employ as porter a negro man named Andy Goodin.

Sam Stanley testified, for the State, that about dusk, one evening in September, 1887, subsequent to the twenty-third, he saw defendant and John Reddick standing on the sidewalk in front of Gough & Smith's store, and, as he passed them to go up the stairway, he heard one of them say to the other: "Boy, what made you wear them shoes to-night?" Gough & Smith's store was not then closed. Defendant and Reddick were negro boys of near the same age, and both were very intelligent for their age and race. Witness considered them intelligent enough to know the wrong and illegality of breaking into and robbing a store.

The matter involved in the fifth head note of this report refers to the testimony of G. F. Whitlow, who was the next witness for the State. He testified as follows: "I am the city marshal of Clarksville. I have known the defendant for about a year. After the arrest of the defendant and after his release, upon bond, his brother came to and requested me to go to their mother's house and see if I could not get the defendant to tell what man put 'them' up to the burglary, as he, the defendant's brother, was satisfied that some man was at the bottom of the affair. I went to the house of the defendant's mother and had a talk with the defendant. My official position was known to him, and I told him that it might be best for him to tell all about it, and that if he did tell all he knew about the burglary he might be permitted to turn State's evidence. I do not remember whether or not I told him that he would or would not be prosecuted, but I think I told him that it 'might be best for him to tell all, and that he might escape by doing so.' The defendant then told me that on the night he went into Gough & Smith's store, Andy Goodin, Barry, Love & Co.'s negro porter, caught him on the street, covered him with a pistol, and told him that if he did not

go through the window and open the door that he, Goodin, would blow his brains out; that Goodin made him go through the window and open the door; that Goodin then went into the store and made him climb to the top of a stack of flour and hand him down two sacks of what he said was the best flour, and that Goodin then took some cigars and snuff. He said that Goodin and he went into the said store twice."

W. H. Dickson testified, for the State, that the defendant was the posthumous child of an old negro who, in slave times, belonged to him, witness. That old negro died in May, 1875, and the defendant was born in the following August, and was consequently, at the time of this trial, December, 1887, but little above twelve years of age. He was a negro boy of average intelligence.

A. P. Gray testified, for the State, that the defendant personally signed his appearance bond, and that the signature showed a good handwriting.

The State rested.

Angie Carr, the mother of the defendant, testified, in his behalf, that he was born in August, 1875, and was, therefore, but little past twelve years of age at the time of this trial. His mental capacity was inferior to that of ordinary boys of his own age and race. He had attended school and could read and write, and witness, though she had tried, had never been able to teach him to do right and read his bible.

The defense closed.

Andy Goodin testified, for the State, that he was employed as porter in the store of Barry, Love & Co. until John Reddick was caught in "their" store. He had not been in that employment since. Witness knew nothing whatever of the defendant going into the store of Barry, Love & Co. or that of Gough & Smith, or that of anybody else, nor had he ever asked or forced or procured the defendant to go into anybody's store.

The motion for new trial raised the questions discussed in the opinion.

*Sims & Wright*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

WILLSON, JUDGE. At the time of the commission of the offense, the evidence shows that the defendant was over nine but under thirteen years of age. His non age being established, the

burden devolved upon the State, in order to subject him to punishment, to prove that at the time he committed the offense, if he did commit it, he understood the nature and illegality of the act. Proof that he knew the difference between good and evil, or that he was possessed of the intelligence of ordinary boys of his age, does not fill the requirements of the law. It must be shown that he had sufficient discretion to understand the nature and illegality of the particular act constituting the crime.

It is not required that proof of discretion should be made by direct and positive testimony. In most instances, circumstances of education, habits of life, general character, moral and religious instructions, and often times the circumstances connected with the offense charged, will be sufficient to satisfy the jury that the defendant had the discretion required to render him responsible for the crime. (Willson's Texas Crim. Laws, secs. 71, 72, 73, 74.)

On the trial of this case the court, over the objections of the defendant, permitted several witnesses to state their *opinions* as to the discretion of the defendant, and these rulings of the court are presented for revision by proper bill of exception, and insisted upon as error. The precise question thus presented has never been directly adjudicated by the courts of last resort in this State. A familiar general rule of evidence is that witnesses can only speak as to facts, and can not be permitted to state their belief or opinions. But to this general rule there are well settled exceptions, one of which is that where the issue is as to the sanity of a person, even witnesses who are not experts are permitted to state their opinions and conclusions upon the facts to which they testify. (Willson's Texas Crim. Laws, sec. 87. See also as to other exceptions, Cooper v. The State, 23 Texas, 331; Whart. Crim. Ev., secs. 459, 460; Roscoe's Crim. Ev., 7 ed., pp. 143, 144.)

Should the exception which applies where the issue is sanity apply in this case? We can see no good reason why it should not. In the two cases the inquiry is substantially the same—that is, the mental status of the defendant at the time of the commission of the act. The two issues are analogous, if not precisely the same, and it seems to us that evidence which is competent upon the one should be held competent upon the other. We hold, therefore, that it was not error to permit the witnesses to state their opinions that the defendant, at the time of the commission of the burglary, had sufficient discretion to

Opinion of the court.

understand the nature and illegality of the acts constituting that crime, said witnesses having stated the facts upon which their opinions were based; that is, their acquaintance with the defendant; that he was a bright boy, could read and write, etc. As to the weight to be given to these opinions, that was a matter for the jury to consider and determine, and does not relate to the admissibility of the opinions as evidence.

With respect to the charge of the court upon the issue of the defendant's discretion, it is in our opinion correct, and presents the defense of infancy affirmatively and clearly. It was not error, therefore, to refuse to give the special instruction requested by the defendant's counsel, upon said issue.

As to the admissibility of the defendant's confession, we think there can be no doubt. He was properly cautioned, before making the confession, that it could be used against him. It was not made under the influence of fear, or of any positive promise of a benefit to be gained by him by making it. Under the rules now governing the admissibility of confessions, we do not think the court erred in admitting the confession. (Rice v. The State, 22 Texas Ct. App., 654; Thompson v. The State, 19 Texas Ct. App., 595.)

That portion of the defendant's confession which stated that in burglarizing the house he acted under compulsion of another party was contradicted by the testimony of the party named. It was for the jury to determine the credibility and weight of the evidence, and in doing so it was within their province to believe one portion of the confession to be true, and to reject as untrue another portion which had been contradicted by other testimony adduced.

Defendant having confessed that he entered the house with intent to commit theft therefrom, the case is not one in which the conviction was sought or wholly founded upon circumstantial evidence, and it was not necessary, therefore, that the court should instruct the jury with regard to circumstantial evidence.

We have given this case a careful consideration, and we find no reversible error disclosed in the record. While the evidence of defendant's guilt can not be said to be entirely free from suspicion and doubt, still it must be regarded as legally sufficient to support the conviction. The judgment is therefore affirmed.

*Affirmed.*