The opinion of the court was delivered by
Monroe, J.
Defendant was convicted, under Act 69 of 1896, of *1923 the “detestable and abominable crime against nature”, committed, as to him, “with the mouth”, with a boy, over fourteen years of age, and has appealed from a sentence of six years imprisonment, subject' to ■commutation. The questions presented for our consideration are embodied in two motions to quash the information, in several bills of ex-■eeption, and in motions for new trial and arrest of judgment.
I.
The motions to quash are based upon the propositions, that the offence ■charged is not defined by, and hence constitutes no crime under, the laws ■of this State; that the crime against nature, as denounced by the Act ■of May 4, 1805, was not a common law crime; that the 33rd section of said act, referring to the common law for the definitions of the crimes therein denounced, therefore, furnished no definition of it, and that .said crime is not defined by either section 788 of .the Revised Statutes, or by the Act No. 69 of 1896; that, if it be claimed that said crime was known to the common law, and that section 33 of said act of 1805 furnished a definition of it, by referring to the common law for the .same, said section was repealed by section 73 of act No. 121 of 1855; and that, if it be claimed that such definition is to be found in section '976, Revised' Statutes, said section is unconstitutional,- in that it contravenes Article 116 of the Constitution of 1868, under the dominion •of which it was adopted.
It is further claimed that the information is defective, in that it pretends to charge two distinct crimes, in the same count, and that it is too vague and indefinite properly to place the defendant on his guard.
“The detestable and abominable crime against nature, committed with mankind or beast”, as denounced by the act of 1805, and by section 788 of the Revised Statutes of 1870, was held by this court, in State vs. Williams, 34th Ann. 87, to have been a crime known to the •common law. Referring to this case, Mr. Bishop says: — “In Louisiana, a statute making punishable the ‘crime against nature’, was adjudged, it is believed correctly, to refer to sodomy and to be sufficiently specific and definite.” Bishop’s New Cr. L., 1191. The same writer quotes Hawkins, to the effect that the crime was a “felony by the ancient common law”, Ibid., Par. 503. Blackstone speaks of it as the “infamous ■crime against nature,” pecatum, Mud horrible, inter christianos non nominandum, and says that, under the ancient law, the penalty was *1924 death by fire, and that Fleta was of the opinion that those convicted of it should be buried alive; but that, “being in times of popery only subject to Ecclesiastical censures”, it was made a felony without benefit of clergy by statute 25, Henry VIII. c. 6, revised and confirmed by 5 Eliz.. c. 11; and that hanging is the general punishment of all felonies.
Bl. Com., Vol. 4, p. 215.
The effect of the statute of Henry VIII, therefore, was to restore to the common law jurisdiction, and to modify the penalty for, a crime, which had long been known to and punished by the common law.
Even if this were not so, the statute of Henry VIII is considered to. have been sufficiently early in date to be common law in this country. Bishop’s New Cr. Law, 503; and this is particularly true with regard to Louisiana. Thus, in State vs. McCoy, 8 R. 545, our predecessors in this court, having occasion to consider a modification or amendment to-the common law, by statute of Edward VI, said that section 33 of the Act of 1805 “must be understood as having adopted that system of law,, as it existed in 1805, modified,- explained and perfected by statutory enactments so far as these enactments are not inconsistent with the peculiar character and genius of our institutions”, and the statute of Edward VI, fixing the venue in a certain class of murder cases, was accordingly held to be common law, within the meaning of the statute of 1805.
It is urged that the 33rd section of the act of 1805 is repealed by section 13 of Act 121 of 1855; thus, it is said, leaving the crime with which the defendant is charged without the reference to the comomn law ngon. which it depends for its definition. Whatever may have been the merits of this contention, as an original proposition, it can not be sustained at. this time, since it was held by this court, shortly after the adoption of the act relied on, and lias been so held repeatedly since then, that section 33 of the act of 1805 was “expressly preserved in force by the 73rd section of the act relating to criminal proceedings, No. 121 of the session acts of 1855, State vs. Lacombe, 12 Ann., 195; State vs. Smith, 30 Ann., 846; State vs. DePass & Baptiste, 31 Ann., 847; and that it ia reproduced in section 976 of the Revised Statutes, State vs. Gaster, 45 Ann. 636, which ruling effectually meets the objection to the constitutionality of said section 976, predicated upon Article 116 of the Constitution of 186S, since the section in question was merely a re-enactment *1925 of an existing statute, and not of a “system or code of laws”, the reenactment of which, by reference thereto, was prohibited.
The “crime against nature” was, therefore, denounced by the Act of 1805, re-enacted as section 788 of the Revised Statutes of 1870, and the definition of said crime was furnished by section 33 of said Act of 1805, referring to the' common law for the same, which common law° definition has been re-enacted as section 976 of the Revised Statutes of 1870. Rut it seems that there was some doubt, as to whether, when the act was •committed, by one of the parties, with the mouth, it fell within the definition thus furnished. The General Assembly, therefore, passed the Act No. 69 of 1896, imposing the penalty upon any one convicted of the crime against nature “committed with mankind or beast, with the sectual organs, or with the mouth.” Some criticism is indulged in concerning the word “sectual,” as thus used, but the purpose of the law would have been as well accomplished, if it had been left out entirely, and the statute had read “crime against nature committed with mankind or beast * * * with the mouth”, though, no doubht, it must appear that the sexual organ of the one party, or the other, either the agent or the pathic, was used, since the crime, “sodomy” is a carnal copulation by human beings with each other, against nature, or with a beast.”
Bishop’s New Cr. L., Vol. II, 1191.
But why, in the common law courts, the use of the mouth should not have been considered as much against nature, as though the act were committed per anum is incomprehensible.
It is said that the information charges the defendant with carnally knowing the person named, and then charges that he committed the crime, “by sucking with the mouth”, and that these constitute two offences, in one of which the defendant is made the agent and in the other, the pathic. The information is drawn in strict accordance with the form recommended by all received authority; but one crime is charged, and the particular act of the defendant, constituting that crime, is specified. Whether he was agent or pathic is immaterial. Even “those who are present, aiding and abetting the offence, are all principals”. ,
Archibold Cr. Pl. & Pr. 185.
*1926 Bill of Exception “A”.
To the admission of an alleged confession by the defendant, on the ground that it was not shown to have been made _freely and voluntarily,, but was extracted by threats.
The'judge a quo gives the following reasons for the ruling to which this bill is taken, to-wit:—
“ The evidence on this point was, that while the witness, Bourg, was “ on the front porch of the dwelling house of T — , engaged in conver- “ sation with the said T — !—-, the latter’s wife, and two men visitors, “ the accused came along in a gig, with his son Cyprien; that when “ they arrived in front of the house, they called, in turn, A-, T-, “ and the witness, Bourg. When these reached the road, Cyprien, hav- “ ing gotten out of the gig, stood in front of the horse, holding it by the “ bridle, and asked T-what he was trying to do with his, Cyprien’s, “ family. Whether he was trying to ruin them. T-answered, that “ so far as Cyprien .and his mother were concerned he intended them no “harm, and added: ‘But as to that damned dirty old fellow (modit “ vieux Salop),1 want to send him where he ought to have been long ago.’’ “ This was said while pointing to the accused. Cyprien then asked what “ was the matter; what had been done. T-replied that what had “ been done to his family was of such a nature that he would have per- “ ferred the accused to have killed him rather than to have done what “ he had done. • Cyprien then asked again what had been done. T-“then said, the accused s — d the--of my son, Ned, until he has “lost his mind. It was then that the accused protested vehemently “ that he had not. Harsh words then passed from T-to accused, but “ no threats of harm wore made. The son of the accused, Cyprien, then “ remarked to T — — that since the accused said that he had not done “ anything to his son, Ned, his word ought to be as good as Ned’s. T— “ said that it might be better than Neds, because Ned had lost his mind,. “ but he T-would not believe (the accused) under oath. T-then “turning to the accused said to him: ‘You may deny that you have-“put my boy in the condition in which he is, when you have s — d my “son John, Jules--, (the prosecuting Witness in this case), and “-V To which the accused answered, ‘As to those three, I don’t “say no; I did it, but I swear on my honor, I have not done it to- “ Ned.’ “That was, in substance, the evidence, and the nature of the confession. The court was of opinion that it was voluntary.”
*1927 We find no error in this ruling, the accused having voluntarily stopped, in order to discuss the question, denied, and continued to deny, the particular charge of which complaint had been made, and voluntarily admitted that upon which he is being prosecuted, ineidently, and in answer to a question. State vs. Tazewell, 30 Ann. 884; State vs. Bartly 34 Ann. 147; State vs. Berry 15 Ann. 1309.
Bill or Exception, “B”.
To the refusal of the judge a q-ii,o to charge the jury that there must be proof of emission, in order to convict. The judge says upon this point:—
“While there was no direct proof of emission, the evidence given by “ the prosecuting witness, the boy with whom the act is charged to have “ been .committed, was to the effect that the accused s — d his sexual “ organ during about three minutes’ time, and there was no evidence “ that the act had been interrupted before completion. The court re- “ fused the requested charge, because it is of the opinion that it was not “good law.”
The crime which we are here considering, is generally regarded as being governed in some respects by the principles of law which are applicable to rape. But it can be readily understood wiry proof of emission might be considered necessary to establish the latter crime and yet not be considered necessary to establish the former. In regard to rape, however, the very best common law authorities were divided in opinion, as to whether such proof was necessary, and it had been decided in the English courts, first in one way and then in the other, prior to the year 1781, when in “Hill’s Case”, (1 East. P. C. 439), it was held that proof of emission was necessary; and so far as we are informed, that decision had neither been reversed nor affirmed, in 1805, when our statute of that year was passed.
Subsequently, by statute of George IV, in 1828, it was declared that, in eases of buggery and rape, proof of penetration, alone, should be deemed sufficient. In this country the same conclusion has been reached; in some States, by the decisions of the courts, construing the common law as it stood before the passage of the act of Parliament mentioned, and in other States, where the common law had been differently construed, by legislative enactment. The question, then, is, whether the decision in “Hill’s Case” is to be regarded as absolutely conclusive as to *1928 what the common law was in 1808, merely because it happened to stand unreversed at that time. We are of opinion that it should not be so regarded, and especially with respect to the particular crime with which the present defendant is charged, the enormity of which consists, solely, in its utter bestiality. We are strengthened in this view by the fact, that, as early as 1812, in Virginia, and in 1813 in South Carolina, it was held that, at common law, penetration alone constituted the crime of rape, as well as of sodomy. See Archibold Cr. Pr. & Pl., Vol. II, pp. 164, 165 notes, in which it is said: “In Virginia, as early as 1812, the general court thought that the opinion of Coke, as expressed in his third institutes, 59, 00, and of Lord Hale, (I H. H. 628) together with modern decisions in favor of the fact of penetration alone constituting-the crime of rape, as well as sodomy, were more rational than the contrary opinions and decisions, which require both facts to be proved.”
Citing, also, State vs. LeBlanc, 2 Const. Rep. (S. C.) 351, and Commonwealth vs. Sullivan, Addison’s Penn. Reps. 143.
Bill or Exceptions, “C”.
To the refusal of the court to charge, that in a case tof this kind, “ as in cases of rape, there must have been complaint made within rea- “ sonable time. That the evidence showed the act to have been com- “ mitted in the winter of 1898, and that the prosecuting witness, and ac- “ complice, a. boy of fourteen years and over, stated that he made no “ complaint or statement of the offence till some time about the first “ of August, 1899. ’’The judge a quo states, upon the bill: “The boy was “ over fourteen, but under fifteen years of age, at the time of the com- “ mission of of the crime. The court does not consider the requested “ charge good law in the case at bar, even though it should be considered “ good law in case of rape, which is doubted.”
We entirely concur in this ruling, being of opinion that, considering the character of the offense, the personsl by whom committed, and the time at which the information was filed, the requested charge would have been improper and calculated to confuse the jury.

Bill of Exception “D

To the charge given by the court: “You must judge of his testimony “ (referring to the testimony of the accomplice in the act), whether *1929 “ corroborated, or uncorroborated, and give it such effect as you think ■“right;” to which the defendant objected, and asked “that the charge “be given that the testimony of an accomplice could not be taken, ■“unless corroborated by evidence going to show some fact; not only “ that a crime had been committed, but that the prisoner is implicated “in it.”
The learned judge a quo gives the following, as his reasons for the ruling objected to, to-wit:
“After charging the jury that a party consenting to and participating •“in the act charged as a crime was an accomplice, the court charged “ further: ‘The fact that a witness was an accomplice may effect his “ credibility, but not his competency; that he is a legal witness, and 'you “ must determine what credit you think his testimony is entitled to, “ whether corroborated or uncorroborated.’ This was the exact “ language of the charge, the court having before it, at the time of “giving it, approved in the 40th Annual, 739. The law as settled by “ this case, the court takes to govern the matter of the testimony of *‘ accomplices in all cases.”
There is no doubt that an accomplice is a competent witness, provided he is not being tried at the same time with the accused, for or against whom he is called on to testify, the fact of his being an accomplice •affecting his credibility only, of which the jury are the judges. State vs. Prudhomme, 25 Ann., 522; State vs. Bayonne, 23 Ann., 78; State vs. Mason, 38 Ann., 476. The objection that the testimony of an accomplice could not be “taken,” unless corroborated was, therefore, not well made, and was properly overruled. The learned counsel for the defendant, in their very able brief, present an argument, however, based upon the proposition that, whilst the testimony of an accomplice, not on trial with the accused, may be received, the jury should'be warned against convicting on it alone and unless corroborated by some fact, ■deposed to independently altogether of such testimony, leading to the inference that a crime has been committed and that the prisoner is implicated in it; and this proposition, it is said, is embodied, or was intended to be embodied, in the requested charge. We have no doubt that the meaning which the counsel now attribute to the charge requested by them is that which was intended, since they so state, but the language used by them in making their objection and request in the court a qua is not readily susceptible of that interpretation, and means, upon its face, that the jury should be instructed not to consider, at all, *1930 the testimony of the accomplice “unless corroborated,” etc. As thus interpreted, the rule applied to it by the judge a quo was certainly correct, and wo must assume that it was made upon the basis of the obvious meaning of the charge as requested, rather than of the intention of the counsel, by whom the request was made. It will be observed that the judge a quo states that he takes the law as settled in. the case in 40 Ann., 739 (State vs. Banks et als.) as governing the matter “of the testimony of accomplices in all cases.” Referring to that case, it appears that the doctrine for which the counsel for the defense contend is there recognized, sinca it was said by the court: “It was not “ only competent for the District Attorney to seek, at any stage of the “ trial, to corroborate the testimony of an accomplice who had turned “ State’s evidence, but it was his duty to do so, in compliance with “ well settled jurisprudence and in justice to the accused themselves,. “ whose counsel were zealous in their efforts to prevent a conviction on “ the uncorroborated testimony of an accompllice, and this was the “ subject of their fourth bill of exceptions, in which they complain of “ the refusal of the judge to charge the jury to give no faith to thé“statements of the accomplice, implicating other persons but himself, “ unless he was therein corroborated by unimpeached evidence.”
The requests made by the defendants’ counsel in the case thus cited,, and that made by the counsel in the instant case, were, therefore, substantially the same, and were denied for the same reason, to-wit: That it is not the law that the testimony of an accomplice is not to be taken or received, or is entitled to no credit, whatever, unless corroborated. And no better evidence, that a ruling upon such a question does not involve the question whether the jury ought to convict on such testimony, uncorroborated, can be found than is afforded by the fact, that, in the case "cited, in which such ruling was made, it was distinctly held that it was not only competent for the District Attorney to corroborate-the testimony of an accomplice, but that it was “his duty to do so, in compliance with well settled jurisprudence,” etc., which doctrine lias, been sustained in State vs. Mason, 38 Ann., 476, the syllabus in which reads:
“While -the jury may convict on the testimony of an accomplice,. “ alone, the judge should caution them, in prudence, not to return a “ verdict of guilty unless such evidence is corroborated; but this court; “ will not control him as to the language he shall employ in giving such *1931 “ instructions.” And in State vs. Callahan, 47 Ann., 481, et seq., where this court, through Mr. Justice Watkins, said: “That we be “ under no misapprehension with regard to the legal status of an “ accomplice who is placed upon the witness stand to testify in behalf “ of the State, let us look into the authorities on the subject and see. “how they stand,” following which is a review of authorities to the effect that a person charged with a felony ought not, ordinarily, to be convicted on the uncorroborated testimony of an accomplice; and declaring the character of the corroboration which should be required. Upon these questions, however, we do not understand the judge a qua to have been called on to rule, and his ruling, as challenged by the bill now under consideration, being- correct, can not be disturbed.
Tiie Motion por New Trial.
Reiterates some of the matter already considered, and sets forth, further, that the pretended confession named no date when the act was committed, and that the law is positive that, in such a case, only one act can be proved, and that must be fixed by the indictment, etc.
It is sufficient answer to this to say that the information charges one. offense as having been committed, upon a date named, and that it was a question for a. jury, whether the confession, as made, applied to that, offense.
The motion in arrest of judgment contains nothing which has not. been already considered.
Judgment affirmed.
Rehearing- refused.