State of Iowa v. Charles McGruder, Appellant.

**Sodomy:** sufficiency of indictment. An indictment alleging in 1 substantially the language of the statute that defendant committed the crime against nature, in that he had carnal copulation with a certain boy " in an opening of the body other than the sexual parts," was a sufficient description of the opening.

**Sodomy:** sufficiency of proof. *Emissio seminis* is not an essential 2 element of the crime of sodomy, but proof of penetration alone will support a conviction.

**Mental weakness:** extent of impairment: evidence. Where mental 3 weakness or imbecility is interposed as a defense to crime, and a nonexpert witness has shown himself qualified to testify respecting defendant's unsoundness of mind, he may be interrogated as to whether the accused was able to appreciate the difference between right and wrong.

**Evidence:** teacher's record. The record of a teacher showing de- 4 fendant's standing in his various studies is admissible, where properly proven, rather than the oral recitals therefrom.

**Imbecility:** acquittal. On a prosecution for sodomy, if the act is 5 shown to have been the result of an insane impulse, or if the accused was unable to comprehend the nature and consequences of his act, he is entitled to an acquittal.

*Appeal from Hancock District Court.*—Hon. J. F. Clyde, Judge.

Tuesday, December 13, 1904.

THE defendant was convicted of the crime of sodomy, and appeals.— *Reversed.*

*John A. Senneff,* for appellant.

*Charles W. Mullen, Attorney General,* and *Lawrence De Graff, Assistant Attorney General,* for the State.

LADD, J.— The indictment accused the defendant of having committed the crime against nature, in that he had carnal copulation with a boy, naming him, " in an opening of the body other than the sexual parts.", This

1. SUFFICIENCY OF INDICT- MENT.

is, in substance, the language of our statute defining sodomy. Chapter 148, page 107, Acts Twenty-ninth General Assembly. Appellant insists the allegation is insufficient, in that the particular opening is not designated. We think it individualized the offense to such an extent as to have advised the accused of the particular crime charged. See *State v. Porter,* 105 Iowa, 677. The rule with respect to the description of offenses exacted at the common law was greatly relaxed in cases like this, where a sense of common decency was held to excuse the prosecutor from setting out the details. To charge generally the commission of the abominable crime against nature or of sodomy, merely naming it, with a designated person, was sufficient, for what was meant is said to have been " too well understood and too disgusting to be defined farther than by merely naming it." *Davis v. State,* 3 Har. & J. (Md.) 154 (20 Enc. P. & P. 275); *State v. Williams,* 34 La. Ann. 87. See, *contra, State v. Campbell,* 29 Tex. 44 (94 Am. Dec. 251). Sir William Blackstone, after referring to the necessity of full proof, adds: " I will not act so disagreeable part to my readers as well as myself as to dwell longer upon a subject, the very mention of which is a disgrace to human nature. It will be more eligible to imitate in this respect the delicacy of our English law, which treats it, in its very in-

dictments, as a crime not fit to be named." Volume 4, page 215.

The definition of the statute is broader than that of sodomy as understood at common law. *Prindle v. State,* 31 Tex. Cr. R. 551 (21 S. W. Rep. 360, 37 Am. St. Rep. 833). But it is quite as detestable and no less a disgrace to human nature, and precisely the same reasons for not entering into detail, in describing it, still exist. The indictment informed the defendant that he was accused of a crime against the order of nature, and named the person with whom he was charged with having committed it. This was enough to enable him to prepare his defense, and the judgment when entered may be pleaded in bar to another prosecution. In *Commonwealth v. Dill,* 160 Mass. 536 (36 N. E. Rep. 472), the court held that to allege that the accused "did unlawfully and feloniously commit a certain unnatural and lascivious act" with a named person, in following language of the statute, was sufficient, even though any mode of unnatural copulation, not coming within the definition of sodomy as usually defined, was intended by the Legislature. In *Honselman v. People,* 168 Ill. 172 (48 N. E. Rep. 304), the statute, denouncing a penalty against "every person convicted of sodomy or other crime against nature," was held to include any act which might be condemned under the statute of this State, and an indictment charging that defendant had committed "the infamous crime against nature upon and with Lloyd Kesler, a man then and there being," was upheld as against precisely the same criticism urged in the instant case. In the course of the opinion the court said.

The statute gives no definition of the crime, which the law, with due regard to the sentiments of humanity, has always treated as one not fit to be named. It was never the practice to describe the particular manner or details of the commission of the act, but the offense was treated in the indictment as the abominable crime not fit to be named among Christians. The existence of such an offense is a disgrace

to human nature. The Legislature has not seen fit to define it further than by the general term, and the records of the courts need not be defiled with the details of the different acts which may go to constitute it. A statement of the offense in the language of the statute, or so plainly that its nature may be easily understood by the jury, is all that is required.

These views were subsequently approved by the same court in *Kelly v. People,* 109 Ill. 119 (61 N. E. Rep. 425, 85 Am. St. Rep. 323). There is no reason for thinking courts of the present day less sensitive than their Anglo-Saxon predecessors. The same grounds still exist for excluding the details of the detestable crime, in so far as possible, from the public records, and we think that it is described with sufficient definiteness to answer every purpose when charged in the language of the statute.

II. Complaint is made that the court did not define with sufficient particularity the " carnal copulation " essential to constitute the crime. The jury was told, in substance, that there must have been some penetration, but of no particular distance, and also that *emissio seminis* was essential. In the absence of the evidence on the subject in the abstract, it cannot be said this was not sufficiently specific, and certainly the defendant has no cause of complaint. The authorities are in conflict as to whether proof of *emissio seminis* is essential in a case like this. A review of the early English cases by Mr. East will be found in 1 East, P. C. 437, where it is noted that Lord Coke stated in the Institutes that " there must be penetration — that is, *res in re* — but the least penetration maketh it carnal knowledge. *Emissio seminis* makes it not sodomy, but is an evidence in the case of penetration." But in his Reports Coke seems to have expressed a different view (12 Rep. 37), though Lord Hale was of the opinion that there was a mistake therein, and that the statement in the Institutes expressed Coke's real opinion. In Duffin's Case

2. SODOMY: sufficiency of proof.

(decided in 1722), the judges, by a vote of six to five, held emission an essential ingredient of sodomy, the five basing their conclusion largely upon the difficulty of such proof, and mentioned that no notice of the point was taken in Safford's Case, 12 Co. 37, which was a posthumous work, and differed from 3 Institutes, 58. The trial of Ruffen for rape occurred in 1777, and the judges present unanimously approved an instruction that, if there was any penetration, regardless of the other matters, he should be convicted. Mr. East observes that " at this period the weight of authorities was supposed to be much against the necessity of the two proofs " (both penetration and emission), and thus the law stood at the time of the separation of this country from England. In Hill's Case, decided in 1781, under the direction of Buller, J., the jury found that there was penetration but no emission, and a majority of the seven to three of the judges adjudged him not guilty, Lord Mansfield expressing no opinion. The decision seems to have been put on the ground that to constitute carnal knowledge the act must be consummated. In volume 2, Bishop's New Criminal Law, section 1127 et seq., that author seems inclined to the contrary view, and also observes that, " though writers generally assume that rape and sodomy stand on common ground, reflection may suggest differences." In his notes to Smith v. State, 12 Ohio, 466. (80 Am. Dec. 355), Mr. Freeman, after referring to Mr. East's statement quoted above, says that " in this country this should settle the question and establish that emission is not necessary, and that penetration is sufficient, and this is now the current of authority." An examination of the decisions confirms this view. Penn v. Sullivan, 1 Add. (Pa.) 143; Com. v. Thomas, 1 Va. Cas. 307; State v. Shields, 45 Conn. 256; Comstock v. State, 14 Neb. 205 (15 N. W. Rep. 355); Com. v. Hussey, 157 Mass. 415 (32 N. E. Rep. 362, 34 Am. St. Rep. 270); Osgood v. State, 64 Wis. 472 (25 N. W. Rep. 529); Rodgers v. State, 30 Tex. App. 510 (17 S. W. Rep. 1077). Contra,

see *State v. Gray*, 53 N. C. 170; *Williams v. State*, 14 Ohio, 226 (45 Am. Dec. 536).

The unsoundness of the contrary opinion is emphasized by the enactment of statutes both in England and in many of the States, including this, eliminating the necessity of such proof in cases of rape. There is even less ground for exacting it in establishing the crime against nature, for " the enormity of the offense," as was observed in *State v. Vicknair*, 52 La. Ann. 1921 (28 South. Rep. 273) " consists solely in its utter bestiality." In that case the manner of the offense was as in this, and the court held that *emissio seminis* was not an essential element of the crime. The same conclusion was reached in *White v. Com.*, 24 Ky. 2349 (73 S. W. Rep. 1120). See 1 McClain's Crim. Law, 450. See, *contra, People v. Hodgkin*, 94 Mich. 27 (53 N. W. Rep. 794, 34 Am. St. Rep. 321). That there may be " carnal copulation " without consummation of all that intended seems too evident for argument, and we are content with holding, without farther elaboration, that proof of *res in re,* without more, is sufficient to justify conviction.

III. Pat McGruder, the father of the defendant, after giving a history of his life, and detailing many circumstances tending so to indicate, testified that from birth up to September 27, 1903, the day the offense is alleged to have been committed, he was of unsound mind. He was then asked whether in his judgment he was capable of knowing or appreciating the difference between right and wrong. An objection as incompetent, and calling for his opinion on the issue to be decided by the jury, was sustained. This was error. The mind may have been unsound, but not to such an extent as to deprive the accused of moral responsibility. The question merely called for the degree of mental soundness, a fact or a condition of the mind recognized generally as a test by which to determine responsibility for crime when mental weakness or imbecility is interposed as a defense. *State v. Felter,* 25 Iowa, 67. In

3. MENTAL WEAKNESS: extent of impairment; evidence.

*State v. Porter,* 34 Iowa, 131, a like question on cross-examination was approved. See, also, *Davis v. U. S.,* 165 U. S. 373 (17 Sup. Ct. Rep. 360, 41 L. Ed. 750); *Clark v. State,* 12 Ohio, 483 (40 Am. Dec. 481). *Contra, Com. v. Rich,* 14 Gray, 335. And it has been held proper on direct examination in the following cases: *Pflueger v. State,* 46 Neb. 493 (64 N. W. Rep. 1094); *Smith v. State,* 55 Ark. 259 (18 S. W. Rep. 237); *United States v. Guiteau,* 1 Mackey, 498, 546; *Carr v. State,* 24 Tex. App. 562 (7 S. W. Rep. 328, 5 Am. St. Rep. 905); *State v. Leehman,* 2 S. D. 171 (49 N. W. Rep. 3). See *Powell v. State,* 25 Ala. 21; *People v. Worthington,* 105 Cal. 166 (38 Pac. Rep. 689); *State v. Lewis,* 20 Nev. 333 (22 Pac. Rep. 241); *Poole v. Dean,* 152 Mass. 589 (26 N. E. Rep. 406). See notes, *Brown v. Mitchell,* 88 Tex. Sup. 350 (36 L. R. A. 64); Rogers on Expert Testimony, section 69. *Pflueger v. State, supra,* overrules views previously expressed by the same court in *Shults v. State,* 37 Neb. 497 (55 N. W. Rep. 1080), in which it was said that such a question was improper as calling for the decision of an issue solely for the jury. In *State v. Brown* (Mo. Sup.) 79 S. W. Rep. 1109, the Supreme Court of Missouri seems to have followed the first Nebraska case and *Reg. v. Layton,* 1 Cox, Crim. Cas. 149, decided at *nisi prius* by Baron Rolfe in 1849.

Of course, a witness may not be asked whether in his opinion the accused is responsible for the act committed, or whether such was the result of an insane delusion. *People v. Thurston,* 2 Parker, Cr. R. 49, 134; *Patterson v. State,* 86 Ga. 70, 12 S. E. Rep. 175. The mere fact that the jury will necessarily pass upon an issue does not necessarily render the inquiry of a witness improper; otherwise, experts on handwriting might not express their opinions of the genuineness of a controverted signature, nor would nonexperts familiar with a party's handwriting be allowed to testify whether that in issue is genuine. In contests over the execution of wills experts are not permitted to answer questions

which embrace the whole merits of the case. *In re Brett's Estate,* 113 Iowa, 111. The ground for such rulings is that whether the deceased possessed sufficient capacity to execute a will is a mixed question of law and fact. But an inquiry as to the degree or extent of mental impairment calls for a statement of fact only. Opinions as to the condition of the mind are received to aid the jury in determining the mental capacity of the accused, and even if limited to categorical statements of sanity or insanity, soundness or unsoundness, the answers, if of any value inferentially or actually, cover or include the issue to be passed upon by the jury. Of course, a nonexpert may not express an opinion concerning mental condition of the subject of investigation save at the times of his observation, and the question propounded to McGruder was so limited; but an expert, as Dr. Carton appeared to be, may be permitted to express his opinion, not only of the condition of the mind at the time of the examination or that fixed by the hypothetical question, but concerning its probable duration, past and future, and whether it existed on a particular day.

IV. The mother of the accused, among other things, testified that he had attended school, and that she knew from an examination of the report cards from the teachers that he was always backward in his studies; that he had been put back several times; that there was a marked difference between him and her other children. To meet this the State called Clara Dunsmoor, his teacher for nearly two years, beginning in 1896, who testified that he had done good work, and that she, as a part of her duties as a teacher, had kept a correct record showing his standing in his various studies on a passing standard of 80 per cent. Over defendant's objection, such record was read to the jury, and also a similiar record kept by her concerning his brother John's standing. The correctness of these rulings in receiving the records in evidence is vindicated by *State v. Brady,* 100 Iowa, 191. It is not to

4. EVIDENCE: teacher's record.

be supposed that the witness could recall the markings, even after refreshing her memory, and in such cases the record is now admitted, instead of the oral recital formerly exacted. The evidence was clearly in rebuttal of what the mother had said of defendant, and the comparison of his school work with that of the other children.

V. The instruction with reference to hypothetical questions and answers based thereon was erroneous, for the reasons pointed out in *Stutsman v. Sharpless,* 125 Iowa, 335,

5. IMBECILITY: acquittal.

and *Hall v. Rankin,* 87 Iowa, 261; *Kirsher v. Kirsher,* 120 Iowa, 337. The instruction on intoxication might well have been more explicit as to the showing of fraud essential to constitute the drunkenness involuntary, and, if there was any evidence that the act was the result of an irresistible insane impulse, it was not necessary, as was said in the seventh instruction, for the jury to find, in addition thereto, that the accused was of such imbecility or weakness of mind as to be unable to comprehend the nature and consequences of the act. Proof of either condition would entitle him to an acquittal. The alleged misconduct of counsel for the State will not be likely to occur on another trial. *Reversed* and *remanded.*