# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## FRANK WISE v. COMMONWEALTH.

### January 18, 1923.

1. SODOMY—*Buggery—Definitions.*—While the words are often used synony-- mously, sodomy in its strict, original sense is the infamous crime against nature, when committed between human beings, while buggery is the same offense committed by a man with a beast; and the Virginia statute is careful to embrace both forms of the offense under the term "buggery" as used therein.

2. SODOMY—*Buggery—Common Law.*—According to the clear weight of authority, the common law definition of buggery, unless aided by statute, does not include carnal copulation *per os.*

3. SODOMY—*Section 4551, Code of 1919—Construction of the Statute—Act per os between Man and Woman.*—Virginia Code of 1919, section 4551, does not extend to an act *per os* between a man and a woman. It punishes (1) buggery, and (2) carnal copulation in any manner with another person of the same sex. Instead of either extending the meaning of buggery, or leaving the word to be broadly construed, it adds an additional,but restrictive, provision to include the offense *per os,* provided it be committed by two persons of the same sex.

4. SODOMY—*Buggery—What Constitutes—Penetration.*—To constitute the offense (of buggery or other "carnal copulation") there must be a penetration (*res in re*), as in rape.

5. ATTEMPTS TO COMMIT CRIME—*Felony not Recognized by Law.*—Where the felony charged in the indictment is not recognized by the law in this State, statutory or otherwise, no conviction can be had under it for an attempt.

6. SODOMY—*Conviction of Assault under Charge of Sodomy.*—Where in an indictment for sodomy no charge of assault was involved, because no force against, or lack of consent on the part of, the prosecutrix was averred, there can be no conviction of assault. Nor is the case in any way within section 4918 of the Code of 1919, authorizing a conviction for a part only of the larger offense charged.

7. AUTREFOIS ACQUIT AND CONVICT—*Dismissal of·Indictment for Sodomy no Bar to Indictment for Assault.*—Where an indictment for sodomy is dismissed, and the defendant discharged from further prosecution thereunder, this does not bar his prosecution for an assault and battery, which, though not charged in the indictment, was committed by him, if the evidence given in the case by the prosecutrix was true.

8. APPEAL AND ERROR—*Judgment in Appellate Court—Reversal of Judgment Overruling Demurrer—Discharge of Accused.*—Where in a criminal case the Supreme Court on appeal reverses a judgment overruling a demurrer to the indictment on the ground that the act charged in the indictment did not constitute a crime in Virginia, it may enter the order which the lower court ought to have entered, sustaining the demurrer and discharging the prisoner from further detention or prosecution under the indictment.

Error to a judgment of the Circuit Court of Lancaster county.

*Reversed.*

The opinion states the case.

*R. O. Norris, Jr.,* and *Frank G. Newbill,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The indictment in this case charges that the defendant, Frank Wise, "feloniously did commit the detestable and abominable crime against nature, called buggery, by then and there feloniously having carnal copulation and intercourse with one Purnell Ross, against the order of nature, by putting his male organ into her mouth, and thereby satisfying his sexual desires and passions."

The jury found him guilty, fixing his punishment at two years in the penitentiary, and thereupon the trial court, having first overruled a motion for a new trial, pronounced sentence upon him in accordance with the verdict.

1. It is earnestly insisted that the evidence was

wholly insufficient to support the verdict. Proof of the act alleged depended solely upon the testimony given by the prosecutrix, an eighteen-year old colored girl, who was married but not living with her husband. Even without regard to the repulsive and unusual character of the crime, the story which she related, as it appears in print, seems improbable, and her testimony was to some extent self-contradictory, and was lacking in any very satisfactory corroboration. The evidence, however, was set out in the record before us in abbreviated and narrative form, and might have impressed us differently if we had seen and heard the witnesses testify. The case was tried by a jury free from exceptions, and the learned judge of the trial court refused to interfere with their finding. As the judgment must be reversed upon another ground, we will not further consider this assignment of error.

2. There was a demurrer to the indictment, which the court overruled, and this is assigned as error.

The ground of the demurrer, specified at the trial and relied on here, is "that * * copulation with another human being in the manner alleged in the said indictment does not constitute the crime of buggery either at common law or as defined by the statute law of Virginia.

The statute under which the indictment was found (Code, section 4551) is as follows:

"If any person (1) commit the crime of buggery, either with mankind or with any brute animal, or (2) have carnal copulation in any manner with another person of the same sex, he shall be guilty of a felony and shall be confined in the penitentiary not less than one nor more than three years." (The figures (1) and (2) have been added by us for purposes which will hereinafter appear.)

[1] It will be observed that this statute does not un-- dertake to define "buggery" except to the extent of clearly embracing both buggery and sodomy in the narrower sense in which the two words are sometimes respectively used—that is to say, while the words are often used synonymously, sodomy, in its strict, original sense, is the infamous crime against nature when committed between human beings, while buggery is the same offense committed by a man with a beast; and the Virginia statute is careful to embrace both forms of the offense under the term buggery as used therein. And,. there being no further definition in our statute, we must. look to the common law for it.

Turning, then, to this latter source of information, we find that there have been two general and conflicting lines of authority. The first restricts the crime in question to carnal copulation between two human beings. (sometimes further restricted to males) *per anum*, and refuses to recognize as coming within the intendment. of buggery or sodomy such a copulation *per os*. *Rex* v. *Jacobs*, 1 Brit. Cr. Cas. 331; *Commonwealth* v. *Poindexter*, 133 Ky. 720, 118 S. W. 943; *Kinnan* v. *State*, 86 Neb. 234, 125 N. W. 594, 21 Ann. Cas. 335, 27 L. R. A.. (N. S.) 478; *Prindle* v. *State*, 31 Tex. Cr. R. 551, 21 S. W. 360, 37 Am. St. Rep. 833; *Ausman* v. *Veal*, 10 Ind. 355, 71 Am. Dec. 331; *People* v. *Boyle*, 116 Cal. 658, 48. Pac. 800; *Davis* v. *Broun*, 27 Ohio St. 326; 2 Russ. Cr.. 698; 2 Bish. New Cr. Law, sec. 1193, 1194; Min. Syn.. Cr. L., p. 181 (sub-head 4e); 25 Am. & Eng. Ency. L.. (2d ed.)1145; 36 Cyc. 502; 1 Whart. Cr. Law (11th ed.),. sec. 754.

The other general, and in a certain sense prepon-- derating, line of authority ascribes a wider meaning to the term and includes therein cases of carnal copulation *per os*, which undoubtedly are of even greater moral:

filthiness and iniquity than the offense indicated by
the narrower definition.    8 R. C. L., p. 334, sec. 365;
25 Am. & Eng. Ency. L. (2d ed.) 1145; *Honselman* v.
*People,* 168 Ill. 174, 48 N. E. 304; *Glover* v. *State* 179
Ind. 459, 101 N. E. 629, 45 L. R. A. (N. S.) 473; *State*
v. *Start,* 65 Ore. 178, 132 Pac. 512, 46 L. R. A. (N. S.)
266; *State* v. *Whitemarsh,* 26 S. D. 426, 128 N. W. 580;
*Herring* v. *State,* 119 Ga. 709, 720, 46 S. E. 876; *White*
v. *State,* 136 Ga. 158, 71 S. E. 135; *Means* v. *State,* 125
Wis. 650, 104 N. W. 815; *State* v. *Gage,* 139 Iowa, 401,
116 N. W. 596; *State* v. *Vicknair,* 52 La. Ann. 1921, 28
So. 273.

It is clear, however, upon a close examination of these
latter authorities, and a comparison thereof with the
former, that this broader definition of sodomy, or bug-
gery, has usually (though not always) been influenced
and aided by statutory provisions, and it would perhaps
be more accurate to say that such statutory provisions,
instead of enlarging the definition, have declared that
the offense *per os* (so unusual and unthinkable as per-
haps not to have been even contemplated in the earlier
stages of the law) shall be classed, not as the same, but
as a like offense, and punishable accordingly.    This ex-
planation of the wider scope apparently accorded in
many modern decisions to the definition of the crime
against nature is discussed in a note to the Nebraska
case of *Kinnan* v. *State, supra,* in 21 Ann. Cas. 336,
wherein the conclusions reached in the Illinois, Iowa,
South Dakota, Wisconsin and Louisiana decisions cited
*supra,* are shown to have been due to the statutes in
those States.

[2, 3] If we were free to do so, we would prefer to
follow these latter decisions, and hold that the offense
charged in the instant case constitutes the crime of
buggery, in Virginia; but we have reluctantly been

forced to a contrary result. According to the clear
weight of authority, the common law definition, unless
aided by statute, does not include carnal copulation *per
os*. There is no Virginia case in point, and, notwith-
standing the contrary authorities (which seem almost
wholly due to blindly following the old case of *Rex* v.
*Jacobs, supra*), we would, if we could without flying
squarely in the face of the statute, make our own in-
terpretation of the common law on the subject, and de-
clare the indictment good. But section 4551 of the
Code holds us strictly to the narrower definition of
buggery. We are unable to see that its terms may be
otherwise fairly understood. It punishes (1) buggery,
and (2) carnal copulation in any manner with another
person of the same sex. Instead of either extending the
meaning of buggery, or leaving the word to be broadly
construed, it adds an additional but restrictive pro-
vision to include the offense *per os*, provided it be com-
mitted by two persons of the *same sex*. Why the addi-
tional crime thus provided for was thus limited, we do
not perceive, unless because the legislators did not even
imagine that such an offense would ever be committed
between a man and a woman. But there seems to us
no escape from the conclusion that such is the effect of
the statute. Undoubtedly, the legislature will cure the
oversight when called to its attention, however rarely
the omission may be likely to prove harmful. We
would render any such curative action by the legisla-
ture unnecessary if we considered that by any fair re-
sort to judicial construction we could accomplish that
end.

The history of the statute confirms the interpreta-
tion which we have felt constrained to place upon it.
For very many years prior to the recent amendment of
section 3793 of the Code of 1887 (Acts 1916, p. 511), the

statute was (with unimportant variations) as follows:
"If any person commit the crime of buggery either with
mankind or with any brute animal, he shall be confined
in the penitentiary not less than two nor more than five
years." 1 Davis' Cr. Law 133; 1 Rev. Code 1819, ch.
159, p. 586; Code 1849, ch. 196, sec. 12, p. 740; Code
1860, ch. 196, sec. 12; Code 1873, ch. 192, sec. 12, p.
1208; Code 1887, sec. 3793. There was no definition,
explanation, qualification or enlargement of the word
"buggery" in any Virginia statute prior to the aforesaid
amendment. The word was used in its common law
sense, whatever that was. No Virginia case ever con-
strued it, but when it first appeared in the statutes of
this State, it was undoubtedly understood by the law of
England, from which we took it, to mean carnal copu-
lation *per anum.* Mr. Minor, in his Synopsis of Crimi-
nal Law, cited *supra,* said: "Act must be in that part
where sodomy is usually committed;" citing 1 Russ.
Cr. 668, and *Rex* v. *Jacobs,* 1 Brit. Cr. Cas. 331—a dis-
tinct and unequivocal recognition of the English view
by strongly persuasive secondary authority in Virginia.
In the meantime, and during all the interval between
the enactment of the first statute in this State on the
subject and the passage of the amendment of 1916, the
weight of judicial decision in other States adhered to
the strict common law meaning of buggery, as defined
in *Rex* v. *Jacobs, supra,* except where there were statu-
tory provisions warranting a broader application. In
this state of the law the 1916 amendment was passed,
adding to the statute the words, "or have carnal copu-
lation in any manner with another person of the same
sex." If the lawmakers had understood that buggery
could be construed to mean carnal copulation through
the mouth—in other words, if they had not thought
that buggery meant exactly and only what it was said

to mean in *Rex* v. *Jacobs, supra,* they would never have considered it necessary to insert the words just quoted. If buggery already embraced the act *per os,* there was no sort of occasion for the change. Not only is this true, but it also necessarily follows that the amendment was equivalent to saying in so many words, that such a crime, *except as between persons of the same sex,* was not within the contemplation of the statute in any sense, because buggery, as the legislature evidently understood the term, did not include the act except *per anum,* and the amendment extended it only to cases *per os* between persons of like sex.

[4] We had thought, upon our first consideration of this amendment, that we might escape the interpretation we have placed upon it by assuming that the purpose of the change was to embrace, as between persons of the same sex, still other methods than *per anum* and *per os* by which the offense against nature might be committed by two human beings. Such an assumption, if reasonable, would still leave room to break away from the weight of authority (as the Georgia court could and did in the *Herring Case*) and hold that buggery, as a matter of common law, includes the two forms of the offense last mentioned (regardless of sex), and that the recent amendment to the Virginia statute was intended to include still other forms as between persons of the same sex. The insuperable difficulty, however, in the way of adopting this method of reasoning, and thus reaching what all must recognize as a conclusion to be desired, is that there seem to be no other ways, except the two mentioned, by which, under whatever name or phrase it may be classified, the crime against nature can be committed. To constitute the offense (of buggery or other "carnal copulation") there must be a penetration (*res in re*) as in

rape. *Thomas' Case*, 1 Va. Cas. 307; Davis Cr. Law, 133; Min. Syn. Cr. L. 181; 2 Bish. Cr. L. (4th ed.), sec. 1172; 25 Am. & Eng. Ency. L. (2nd ed.) 1146; *State v. McGruder*, 125 Iowa, 741, 101 N. W. 646. The only difference in this precise particular between buggery, or other "carnal copulation," and rape is that the penetration must be in some other orifice than the female organ. The offense, so far as known, was first committed exclusively *by male persons per anum*. Instances of a similar offense *between male persons per os* seem to have later come to light. Still more rarely, it appears that such cases have been found between persons of different sex. But what other cases of "carnal copulation" can there be? What other orifices of the human body can be "penetrated" in the sense in which that word is used in the law of rape and buggery?

It seems to us, therefore, that when the lawmakers, in 1916, added to our statute the words "or have carnal copulation in any manner with another person of the same sex," they adopted, by necessary intendment, the narrow common law meaning of buggery, and then recognized (but only as to persons of the same sex) a distinct but similar offense which could only, in the nature of things, be accomplished *per os.*

[5-8] If this conclusion is right, and we have been unable to see any escape from it, than the offense charged in the indictment, being *per os* and between persons of opposite sex, is not within the statute, and the court erred in overruling the demurrer. The indictment was fatally defective. The felony charged is not recognized by the law in this State, statutory or otherwise, and therefore no conviction can be had under the indictment for an attempt. No charge of assault is involved, because no force against, or lack of consent on the part of, the prosecutrix is averred. The case is

not in any way within the influence of section 4918 of the Code, and of the principle recognized in *Canada* v. *Commonwealth*, 22 Gratt. (63 Va.) 899, 905, and similar decisions, authorizing a conviction for a part only of the larger offense charged. The indictment must, therefore, be dismissed and the defendant discharged from further prosecution thereunder; but this will not bar his prosecution for an assault and battery, which, though not charged in this indictment, was committed by him, if the evidence given in this case by the prosecutrix and believed by the jury is true. We shall, pursuant to section 4937 of the Code, reverse the judgment complained of, and enter the order here which the lower court ought to have entered, sustaining the demurrer and discharging the prisoner from further detention or prosecution under this indictment; but this order will be without prejudice to the right of the Commonwealth to prosecute him for assault and battery, if it shall be so advised.

It can hardly be necessary for us to say that the subject of this opinion has been distasteful. The question involved could not, however, be brushed aside or lightly disposed of. An adequate consideration of it seemed to require a somewhat full discussion, and we have endeavored to meet this requirement without unnecessary indelicacy of expression, but also without prudery or idle denunciation of the act charged. This character of evil conduct is the vice of low and depraved natures, and instances of it appear to have been notably rare in this jurisdiction.

For the reasons hereinbefore stated, the judgment will be reversed.

*Reversed.*